The State, ex rel. Petit et al., *v.* Wagner et al.*

(No. 8561—Decided January 12, 1959.)

Mr. *Ambrose H. Lindhorst* and Mr. *Jerome Goldman*, for relators.
Mr. *Harry T. Klusmeier*, for respondents.

Long, J. This is an action filed in this court seeking a writ of mandamus and an injunction based upon the following admitted facts: Relators are, respectively, acting sergeant and patrolman of the police force of the city of North College Hill,

---

*Judgment affirmed, 170 Ohio St., 297.

Ohio; they were appointed to their present positions from a certified list of persons who successfully passed a civil service examination, and are now listed permanently on the classified civil service list of that city.

Prior to November 1958, Frank Niehaus announced his retirement as Chief of Police of the city of North College Hill, to become effective January 1, 1959. As a result of this, the City Council of North College Hill, on the date above, enacted an emergency ordinance "establishing a method for the selection of a new chief of police." This ordinance provides for a competitive examination open to "all qualified persons who apply to take said examination." The ordinance further sets forth the qualifications as to age, residence, etc., of those taking the examination. The ordinance provides that, from the three candidates receiving the highest grades on the examination, the mayor make a probationary appointment of a chief for nine months, which becomes permanent upon the satisfactory completion of the probationary period.

Relators took the examination provided for in the ordinance, and one of them passed, receiving the ninth highest grade. Respondent Russell R. Jones, although not a member of the North College Hill Police Department, also took the examination and received one of the highest grades. It is admitted that he will be appointed as the new Chief of Police of the City of North College Hill, unless this court decides otherwise. It is further admitted that North College Hill is not a so-called home-rule city, not having adopted a charter of its own. It is, therefore, obvious that North College Hill is bound by the general statutes of Ohio so far as civil service is concerned. *Morris* v. *Roseman,* 162 Ohio St., 447, 123 N. E. (2d), 419. These statutes of Ohio are listed as Chapter 143, and comprise Sections 143.01 to 143.99, inclusive, of the Revised Code.

Our attention has been directed to various sections of the Code, as well as to several cases decided by the Supreme Court of Ohio. The relators claim that the general sections of the Civil Service Law with reference to promotions (Section 143.24 and the like) do not apply to promotions of patrolmen and firemen generally. The respondents claim otherwise. They say that because relators took the examination required by the ordinance

(No. 14-1958) they are guilty of laches and have waived any right to complain at this time. With these defenses, we are not impressed.

The sole question in the case, as we see it, is whether the Legislature intended to establish a different rule to be applied in cases of civil service for "promotion in positions above the rank of patrolman." We think it did. Section 143.34 of the Revised Code specifically provides for a method of selection of. positions in the police department, which is obviously different from any other position (excepting the provisions of Section 143.341, Revised Code, applying to the promotion of firemen) which is to be filled through the ministration of civil service. The salient portions of Section 143.34, which is the applicable section, are as follows:

"No positions above the rank of patrolman in a police department shall be filled by original appointment. Vacancies in positions above the rank of patrolman in a police department shall be filled by promotion from among persons holding positions in a rank lower than the position to be filled."

The relators fulfill this requirement; the respondent Russell R. Jones, the proposed nominee, does not meet this requirement.

Then we read this language of the statute: "* * * and no person in a police department shall be promoted to a position in a higher rank who has not served at least twelve months in the next lower rank." Jones fails to qualify in this respect; the relators do so qualify.

The statute further provides:

"No position above the rank of patrolman in a police department shall be filled by any person unless he has *first passed a competitive promotional examination.*"

What did the Legislature mean by "promotional examination"? Of course, we must look further to the statutes to see if we can find a definition. Section 143.16 of the Revised Code defines what is meant by "promotional examination." We quote from the language of this section. "Applicants taking *promotional examinations, which shall be in writing * * *,*" etc. It is admitted that the so-called promotional examination which resulted from the passage of the emergency ordinance (No. 14-1958) was partly in writing, and oral in other parts. This is

directly in conflict with the statute. This court decided that exact point in the case of *State, ex rel. Engleman,* v. *Gertz, Mayor,* 98 Ohio App., 527, 130 N. E. (2d), 452. In that case, the city of Reading attempted to fill the vacancy in the office of chief of police in the classified service by competitive, promotional examination. The examination, as here, was both oral and written, and this court held:

"The provision of Section 143.16, Revised Code, that promotional examinations in the classified civil service 'shall be in writing,' is mandatory, and a promotional examination which is both written and oral, and credit is given for the oral examination, is null and void."

See, also, *State, ex rel. Ethell,* v. *Hendricks,* 165 Ohio St., 217, 135 N. E. (2d), 362, paragraph one of the syllabus.

We, therefore, hold that the previous promotional examination given in the case at bar is a nullity; and an injunction and writ of mandamus are granted, as prayed for in the petition.

*Writ allowed.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.